U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2011 SEP 21  AM 10: 35

CLERK
BY \_\_\_PM\_\_\_
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

AKINWUNMI OWOPETU,  )
 )
    Plaintiff,  )
 )
v.  ) Case No. 5:10-cv-18
 )
NATIONWIDE CATV AUDITING SERVICES, INC.,  )
 )
    Defendants.  )

**OPINION AND ORDER GRANTING DEFENDANT'S RENEWED MOTION
FOR PARTIAL SUMMARY JUDGMENT AND DENYING
DEFENDANT'S MOTION TO RECONSIDER**
(Doc. 47)

    Plaintiff Akinwunmi Owopetu, representing himself, brings this civil action against his former employer, Defendant Nationwide CATV Auditing Services, Inc., alleging that he was wrongfully denied overtime compensation owed to him under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a). Presently before the court is Nationwide's motion to reconsider the court's March 11, 2011 Opinion and Order denying Nationwide's motion for summary judgment and Nationwide's renewed motion for partial summary judgment (Doc. 47). After the court ordered additional discovery, the parties completed briefing the motions on September 8, 2011.

    For the reasons set forth below, Nationwide's motion for partial summary judgment is GRANTED, and Nationwide's motion for reconsideration is DENIED as moot.

**I.    Factual Background.**

    The facts of this case are detailed in the court's prior Opinion and Order (Doc. 42), *Owopetu v. Nationwide CATV Auditing Servs., Inc.*, 2011 WL 883703, at *1-2 (D. Vt.

Mar. 11, 2011), familiarity with which is assumed. Only those facts relevant to the pending motions are set forth here.

Mr. Owopetu was employed by Nationwide as a cable service technician working out of Nationwide's Raleigh, North Carolina facility from June 5, 2009 to November 13, 2009. Nationwide is a subcontractor for the cable company Time Warner Cable ("TWC"), installing and servicing cable television and broadband internet products for TWC customers. Nationwide receives its work orders from TWC to provide specified services for TWC customers, and Nationwide provides these services directly to individual customers in their homes. Nationwide is compensated by TWC according to a rate schedule for each individual service that is part of Nationwide's contract with TWC (the "contract"). TWC customers neither select Nationwide as their service provider, nor pay Nationwide directly. Nationwide is part of the telecommunications industry, and, in particular, the industry of servicing, installing, and repairing cable and broadband equipment.

During his tenure at Nationwide, Mr. Owopetu worked more than forty hours in sixteen separate weeks, for which he was not paid overtime wages. For thirteen of those sixteen weeks (all but the weeks ending September 26, 2009, October 10, 2009, and October 24, 2009 (the "excepted weeks")), Mr. Owopetu's hourly rate of pay exceeded one and one-half times the federal minimum wage of $7.25. In this action, Mr. Owopetu alleges that Nationwide violated the FLSA by employing him for workweeks in excess of forty hours without compensating him at the required overtime rate.

Nationwide initially moved for summary judgment on all of Mr. Owopetu's claims on May 10, 2010, arguing that it was not required to pay overtime compensation because Nationwide falls within the FLSA's exemption for "retail or service establishments." In an Opinion and Order dated March 11, 2011, the court denied Nationwide's motion without prejudice, ruling that Nationwide had not established that persons within or with knowledge of its industry consider Nationwide to provide "retail" services as required by 29 C.F.R. § 779.324. *See Owopetu*, 2011 WL 883703, at *8-9 (citing *La Parne v. Monex Deposit Co.*, 714 F. Supp. 2d 1035, 1041 (C.D. Cal. 2010)). The court also found that the

FLSA's retail or service establishment exemption could not apply to Mr. Owopetu for the weeks during which he worked in excess of forty hours, but did not receive an hourly rate of pay greater than one and one-half times the federal minimum wage. *Id.* at *9-11.

In its pending motions, Nationwide moves the court to reconsider its decision that Nationwide had not established that it is recognized as "retail" within its industry. Alternatively, Nationwide has renewed its partial motion for summary judgment, relying on additional evidentiary support for its arguments. In particular, it has provided undisputed evidence that Nationwide's industry has a "retail concept," and that persons within and with knowledge of the industry view Nationwide's service technicians, such as Mr. Owopetu, as employees of a retail establishment.[1] In opposing these motions, Mr. Owopetu moved to compel discovery from Nationwide. The court granted Mr. Owopetu's motion in part, and ordered Nationwide to produce a copy of "its contract(s) with TWC that was operative during the time that Nationwide employed Mr. Owopetu." (Doc. 60 at 4.) The court also afforded Mr. Owopetu an opportunity to supplement his briefing following receipt of the contract. He did so on August 25, 2011. (Doc. 74.)

II. **Conclusions of Law and Analysis.**

   A. **Standard of Review.**

Summary judgment must be granted when the record shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). In deciding the motion, the trial court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party, and deny the motion if a rational juror could decide in favor of that party under the applicable law. *Scott v. Harris,* 550 U.S. 372, 378 (2007).

---

[1] To the extent that Mr. Owopetu disputes that people in and with knowledge of the telecommunications industry view Nationwide as providing "retail" services, he has not offered any evidence to the contrary. *See* Fed. R. Civ. P. 56(c)(1)(A). Indeed, Mr. Owopetu does not oppose Nationwide's Statement of Undisputed Material Facts. *See* L.R. 56(b) ("A party opposing summary judgment . . . must provide a separate, concise statement of disputed material facts.").

3

To avoid summary judgment the non-moving party must offer more than "mere speculation and conjecture[,]" *Harlen Assoc. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001), as the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In other words, only "disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 249.

### B. The "Retail or Service Exemption" to the FLSA.

The overtime compensation requirement of the FLSA, 29 U.S.C. § 207(a)(1), provides that "employees who work more than 40 hours per week must be compensated for each hour worked over 40 'at a rate not less than one and one-half times the regular rate at which he is employed.'" *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 204 (2d Cir. 2009) (quoting 29 U.S.C. § 207(a)(1)). The FLSA sets forth a number of exemptions to this requirement. *See* 29 U.S.C. § 207(b)-(q). Here, Nationwide contends that it is exempt from paying Mr. Owopetu overtime compensation under the "retail or service exemption" enumerated in section 207(i), which provides that:

> No employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a workweek in excess of [40 hours], if, (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services.

29 U.S.C. § 207(1). "Because the FLSA is a remedial law, exemptions to the overtime pay requirement are 'narrowly construed against the employers seeking to assert them and their application is limited to those establishments plainly and unmistakably within their terms and spirit.'" *In re Novartis Wage and Hour Litig.*, 611 F.3d 141, 150 (2d Cir. 2010) (quoting *Bilyou v. Dutchess Distribs., Inc.*, 300 F.3d 217, 222 (2d Cir. 2002) (other

internal quotation marks omitted)). The burden of proving that an employee is exempt from the overtime requirement is on the employer. *Id.* at 150.

Thus, in order to qualify for the retail or service exemption, Nationwide must demonstrate that (1) Mr. Owopetu was employed by a retail or service establishment; (2) Mr. Owopetu's regular rate of pay exceeded one and one-half times the federal minimum hourly wage; and (3) more than half of Mr. Owopetu's compensation for a representative period of not less than one month represented commissions on goods or services. *See Schwind v. EW& Assocs., Inc.*, 371 F. Supp. 2d 560, 563 (S.D.N.Y. 2005). In its prior Opinion and Order, the court found that Nationwide had established that more than half of Mr. Owopetu's compensation represented commissions on goods or services, and that, but for the excepted weeks, his regular rate of pay exceeded one and one-half times the federal minimum wage, or $10.88 per hour. Thus, the only remaining issue is whether Nationwide is a retail or service establishment.

### i.  *Nationwide is a "Retail or Service Establishment"*

A retail or service establishment is "an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry." *English v. Ecolab, Inc.*, 2008 WL 878456, at *2 (S.D.N.Y. March 31, 2008) (quoting 29 U.S.C. § 213(a)(2) (repealed by Pub. L. No. 101-157 (1989)).[2] Accordingly, this element requires a two-part showing: the employer must show both that its services are not "sales for resale," and that they are recognized as retail services in the industry. *See* 29 C.F.R. § 779.322 ("Under the Act," the requirement that the employer provide "retail" sales or services "is distinct from the requirement that 75 percent of annual dollar volume be from sales of goods or

---

[2] Section 7(i) does not define the term "retail or service establishment." Instead, the court must look to the definition contained in the now-repealed § 13(a)(2) of the FLSA, which set forth the former "retail or service establishment" exemption. *See Kelly v. A1 Tech.*, 2010 WL 1541585, at *10-11 (S.D.N.Y. Apr. 12, 2010) ("courts have uniformly concluded that, despite the 1989 repeal of the exemption [of] section 13(a)(2) . . . , the definition of a retail or service establishment that was contained in that section still applies to the phrase as used in section 7(i)"); 29 C.F.R. § 779.411 (explaining that, for purposes of the § 7(i) exemption, a "retail or service establishment" is as defined in § 13(a)(2) of the FLSA).

services 'not for resale'").[3] Nationwide established in its prior motion that its cable/broadband installation and repair services are not "sales for resale," *see Owopetu*, 2011 WL 883703, at *6-7, therefore the only remaining inquiry is whether such services are recognized as retail in the industry.

Although the question is framed as whether Nationwide's industry "recognizes" that Nationwide's services are "retail," the Supreme Court has "held that the meaning of 'retail' is to be determined by the courts, not by the defendant or the defendant's industry." *English*, 2008 WL 878456, at *12 (citing *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 204-05 (1966)); *see also* 29 C.F.R. § 779.324. Following Department of Labor regulations, courts have recognized that this inquiry involves a two-part test: first, the employer must be part of an industry in which there is a "retail concept," and, second, the specific sales or services at issue must be considered retail within that industry. *See Kelly*, 2010 WL 1541585, at *11 (citing 29 C.F.R. §§ 779.316, 779.322).

Both now and when he responded to Nationwide's prior motion for summary judgment, Mr. Owopetu does not dispute that the industry of servicing, installing, and repairing cable and broadband equipment has a "retail concept." He notes that he previously worked for other cable installation companies performing similar work that he characterizes as retail. *See* Docs. 32-7 ¶ 9, 50 ¶ 26. Instead, he argues that Nationwide's business model cannot be considered retail because, as a subcontractor, it has effectively traded the ability to serve a wider customer base and to charge higher "retail" prices in exchange for the stability of being tied to TWC's existing customers. In addition, Mr. Owopetu contends that Nationwide provides its services for the primary benefit of TWC rather than individual consumers, because individual end-user customers neither choose nor pay Nationwide for its services. Instead, only TWC compensates Nationwide, and this cost is passed on to individual customers in the form of monthly bills for cable and internet service. Finally, Mr. Owpoetu emphasizes the control TWC exercises over the

---

[3] Mr. Owopetu does not dispute that Nationwide is an "establishment," or that, assuming the cable installation services are retail, they comprise 75% of Nationwide's annual dollar volume.

quality and quantity of Nationwide's work and its alleged retention of title to Nationwide's work, arguing this permitted various subterfuges to avoid the impact of the FLSA.

To determine whether the particular industry recognizes that an employer provides "retail" services, the court "first looks to evidence as to how persons in the industry and with knowledge of the industry view the establishment." *La Parne*, 714 F. Supp. 2d at 1041 (citing *Acme Car & Truck Rentals, Inc. v. Hooper*, 331 F.2d 442, 446 (5th Cir. 1964)).

> Such a determination must take into consideration the well-settled habits of business, traditional understanding and common knowledge. These involve the understanding and knowledge of the purchaser as well as the seller, the wholesaler as well as the retailer, the employee as well as the employer, and private and governmental research and statistical organizations. The understanding of all these and others who have knowledge of recognized classifications in an industry, [are] relevant in the determination of the question.

29 C.F.R. § 779.324. Next, the inquiry shifts to a consideration of "whether the business (1) sells goods to the general public; (2) serves the everyday needs of the community; and (3) is at the end of the stream of distribution and does not take part in the manufacturing process." *La Parne*, 714 F. Supp. 2d at 1043; *see also* 29 C.F.R. § 779.318(a) ("Typically a retail or service establishment is one which sells goods or services to the general public. It serves the everyday needs of the community in which it is located.").

Nationwide relies on two additional affidavits to establish that persons in and with knowledge of the telecommunications industry view Nationwide's services as retail. Marsha Alldredge, Nationwide's Corporate Office Manager and member of the Society of Cable Telecommunication Engineers, avers that Nationwide's service technicians, who are employed to "install and service cable television, telephone and broadband internet packages for customers of cable service providers such as . . . [TWC]," are "employed in an enterprise that is recognized as retail in the industry." (Doc. 47-3 ¶¶ 1-2.) Ms. Alldredge contrasted the services that Nationwide technicians provide with "laying or stringing cable to access a new housing development or an area previously not served by

7

cable," which is not recognized as retail. *Id.* ¶ 3. In her affidavit, Fran Plaisted, a certified professional vocational rehabilitation consultant and former president of the Vermont Vocational Rehabilitation Association, asserts that the job of service technician at Nationwide "fall[s] within the generally-recognized and accepted definition of 'retail sales' occupations." (Doc. 47-4 ¶¶ 10-11.)

Because Mr. Owopetu has not produced any evidence to dispute these assertions, the court finds that Nationwide has sufficiently established that persons within and with knowledge of the telecommunications industry view Nationwide as providing retail services. *See Harlen Assoc.*, 273 F.3d at 499.

Next, the court considers whether Nationwide's services are provided to the general public, serve the everyday needs of the community, and are at the end of the stream of distribution. *See Schwind*, 371 F. Supp. 2d at 567. It is undisputed that providing cable/broadband installation and repair services in the homes of end-user customers generally satisfies all three factors. Accordingly, the issue before the court is whether Nationwide's operation under a subcontract with a single cable provider alters the outcome. According to Mr. Owopetu, "[t]o be a retailer in the audio video and telecommunications services industry, Nationwide would have to sell services independently rather than provide the services on behalf of another provider." (Doc. 74 at 1-2.) Mr. Owopetu argues that, under the contract, Nationwide is more wholesaler than retailer because it effectively provides its services in bulk quantities to TWC, and does so at a discounted rate below what it could charge consumers on an individual basis. *See* 29 C.F.R. §§ 779.327, 779.328(b) (explaining that a "wholesale sale . . . is not recognized as retail," and that the term "wholesale" becomes more apt as the quantity and price discounts increase in a particular transaction).

For the following reasons, the court concludes that Nationwide's relationship with TWC does not preclude a finding that Nationwide's services are retail. First, Nationwide services the general public and meets the everyday needs of the community. This is true regardless of whether the consumers to whom Nationwide provides services are also the customers of TWC. *See, e.g., Schwind*, 371 F. Supp. 2d at 565-67 (finding that employer

who provided computer training to its clients' customers was a retail or service establishment under the FLSA); *Schultz v. Crotty Bros. Dallas, Inc.*, 304 F. Supp. 191, 196 (W.D. Tex. 1969) (finding that employer who contracted with school to provide dining services to the school's students and faculty was a retail or service establishment under the FLSA).

Second, although Nationwide is compensated only by TWC, TWC passes this cost onto its customers in the form of cable and internet bills, and thus the cost of Nationwide's services is ultimately borne by the end-user consumer. In *Alvarado v. Corporate Cleaning Serv., Inc.*, 719 F. Supp. 2d 935 (N.D. Ill. 2010), for example, the employer provided window washing services to high-rise buildings, for which it was compensated by property management firms and condominium associations rather than individual building tenants. The court found that the employer served the general public because "the ultimate consumers of [the employer's] services are the buildings' tenants and residents whose windows [the employer] washes," and thus it did not matter that the employer's customers passed the cost of the services through to the "ultimate consumers" by charging rent and property management fees. *Id.* at 939, 944; *see also Schwind*, 371 F. Supp. 2d at 566 (finding retail services where actual recipients of computer training services compensated establishment's clients, who, in turn, compensated the establishment); *Wirtz v. Campus Chefs, Inc.*, 303 F. Supp. 1112, 1119 (N.D. Ga. 1968) ("The retail characteristics of the transaction are not destroyed by . . . payments [to third parties]").

Third, as the court explained in finding that Nationwide's services are not "sales for resale," Nationwide's role as subcontractor does not change the fact that the "customers to whom Nationwide directly provides its services are at the very end of the stream of distribution[.]" *Owopetu*, 2011 WL 883703, at *7 (internal quotation marks omitted). Once Nationwide provides its services they are neither "sold again," *see Schwind*, 371 F. Supp. 2d at 66, nor "passed along," *Alvarado*, 719 F. Supp. 2d at 944.

Finally, Mr. Owopetu's characterization of Nationwide as a wholesaler of cable/broadband installation services does not warrant a different result. In rejecting

9

similar contentions, the courts in both *English* and *Alvarado, supra,* explained that the wholesale/retail distinction is based on outdated federal regulations interpreting the now-repealed § 13(a)(2) overtime exemption, and has little, if any, relevance when applying the § 7(i) exemption.[4] As the court explained in *English*, the § 13(a)(2) exemption was "contingent on the size of the establishment and the type of transactions in which it engaged," *English*, 2008 WL 878456, at *3, and "sought to insulate local interests at the end of the stream of commerce from federal oversight of employee compensation[.]" *Id.* at *14. The § 7(i) exemption, by contrast, "focuses on the employee's compensation rather than the employer's business plan." *Id.* Accordingly, both the *English* and *Alvarado* courts agreed that "[s]o long as the employee meets the other elements of the § 7(i) exemption—he receives commissions and his total wages meet the statutory threshold—it makes little difference whether he performs his services as part of a bulk, discount arrangement with a thousand unit fast food chain or a single one-off sale to a homeowner." *Alvarado*, 719 F. Supp. 2d at 945 (quoting *English*, 2008 WL 878456, at *14). Thus, even assuming that Nationwide delivers its services in bulk quantities (a conclusion that would be in significant tension with the finding that Nationwide serves the general public at the end of the distribution stream), and at discount prices (a proposition for which Mr. Owopetu offers no evidence), that would not negate Nationwide's status as a retail establishment under § 7(i). *See id.*

In sum, the fact that Nationwide operates as a subcontractor that performs services on behalf of TWC does not negate its status as a "retail or service establishment." Nationwide has established that persons within and with knowledge of the telecommunications industry view it as a retail establishment. It has also been established that its services meet the everyday needs of the community, are delivered at

---

[4] Although § 13(a)(2) supplies the definition of "retail or service establishment" for purposes of § 7(i), the two provisions "address fundamentally different concerns[.]" *English*, 2008 WL 878456, at *8. Therefore, "regulations promulgated with § 13(a)(2) in mind," and cases applying § 13(a)(2), "do not necessarily apply with the same force to the employers claiming the § 7(i) exemption." *Id.*

10

the end of the distribution stream, and serve the general public. Combined with Nationwide's showing that its services do not constitute "sales for resale," the court concludes that Nationwide is a retail or service establishment within the meaning of § 7(i).

### III. <u>Conclusion</u>.

For the reasons set forth above, Nationwide's motion for partial summary judgment (Doc. 47) is GRANTED, and Nationwide's motion for reconsideration (Doc. 47) is DENIED as moot.

SO ORDERED.

Dated at Rutland, in the District of Vermont, this 21st day of September, 2011.

_____
Christina Reiss, Chief Judge
United States District Court